UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANNY BEARD,

                Plaintiff,                                          Hon. Gordon J. Quist

v.                                                 Case No. 1:10-CV-630

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____/


**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age as of the date of the ALJ's decision. (Tr. 26-27). Plaintiff possesses an eighth grade education and has no past relevant work. (Tr. 26, 105).

Plaintiff applied for benefits on June 8, 2005, alleging that he had been disabled since May 11, 2002, due to a heart attack, back pain, and knee problems. (Tr. 86-88, 99). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 28-85). On November 14, 2007, Plaintiff appeared before ALJ William Reamon. (Tr. 342-78). In a written decision February 12, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 195-203). The Appeals Council subsequently remanded the matter back to the ALJ for further consideration of Plaintiff's subjective complaints. (Tr. 190).

On August 7, 2008, Plaintiff appeared before ALJ Reamon with testimony offered by Plaintiff and vocational expert, James Lozer. (Tr. 379-405). In a written decision dated August 20, 2008, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 19-27). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6-9). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff later submitted another application for benefits which was granted. (Dkt. #9 at 17). According to Plaintiff, this determination was not based on a rejection of the decision

presently being challenged or based upon findings which differ from those made by ALJ Reamon. Instead, because Plaintiff had by the time of his later application turned 50 years of age (i.e., closely approaching advanced age), based upon the RFC as determined by ALJ Reamon, Plaintiff was found to be disabled pursuant to the medical-vocational guidelines (a.k.a. the "Grids"). *Id.*

### RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's lumbar spine, taken on April 17, 2003, revealed "minimal degenerative disease," but were "otherwise normal." (Tr. 146). On April 30, 2003, Plaintiff was examined by Dr. John Call, Jr. at the St. Mary's Mercy Medical Center Department of Cardiovascular Services. (Tr. 150-51). Plaintiff reported that he was experiencing chest pain. (Tr. 150). Plaintiff also reported that he was previously prescribed high blood pressure medication, but that he "quit" taking it approximately 10 years ago and "has not been on it since." (Tr. 150). Plaintiff reported that he uses marijuana "every now and then" and "smoked crack but quit three months ago." (Tr. 150). Plaintiff also reported that he "drinks and smokes a half a pack a day." (Tr. 150). Plaintiff participated in a myocardial perfusion imaging examination, the results of which revealed "a fixed defect probably representing an inferior myocardial infarction, with a normal overall ejection fraction." (Tr. 147). Dr. Call instructed Plaintiff "concerning the need for behavioral modification in association with drinking, avoiding crack, smoking, etc., weight loss, and exercise." (Tr. 151).

On October 2, 2003, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "minimal degenerative disc disease at L5-S1." (Tr. 154). Plaintiff's

lumbar spine "otherwise appear[ed] normal with no evidence of a disc herniation or stenosis."  (Tr. 154).

On January 21, 2004, Plaintiff participated in a toxicological drug screen, the results of which were positive for cannabinoids and propoxyphene.[1]  (Tr. 259).

On March 29, 2004, Plaintiff participated in an MRI examination of his right knee the results of which revealed "marked degenerative changes."  (Tr. 165).  X-rays of Plaintiff's right knee taken the same day revealed "moderate degenerative changes" with no evidence of fracture or significant joint effusion.  (Tr. 167).

On June 7, 2004, Plaintiff reported to the emergency room complaining of a sinus headache and chest pain.  (Tr. 182-84).  Plaintiff reported that he "drinks occasional alcohol" and that "his last use was Friday night before he got sick, he had a half pint of vodka and some beer." (Tr. 182).  Plaintiff also reported that he uses marijuana.  (Tr. 182).  The results of an examination were unremarkable and Plaintiff was discharged home.  (Tr. 183-84).

X-rays of Plaintiff's right shoulder, taken on November 2, 2004, revealed "mild degenerative changes of the right AC joint," but "no significant abnormalities of the bones, joints, [or] soft tissues."  (Tr. 256).

On August 22, 2005, Plaintiff participated in a consultive examination conducted by Dr. June Hillelson.  (Tr. 269-73).  Plaintiff reported that he was disabled due to back pain, knee problems, and a heart condition.  (Tr. 269-70).  With respect to his back pain, Plaintiff reported "that

---

[1]  Propoxyphene is a narcotic pain reliever.  *See Propoxyphene*, available at http://www.drugs.com/propoxyphene.html (last visited on August 4, 2011).

he has no pain radiation, nor does he have paresthesias and he is in pain approximately 10 percent of the time, with the symptoms being most severe in the morning." (Tr. 269).

As for his knees, Plaintiff reported that he injured them playing sports when he was a teenager. (Tr. 270). Plaintiff reported that his knees "bother him mostly in the morning and medications are not very helpful." (Tr. 270). Plaintiff also reported that he "has not had physical therapy to his knees, nor has he had braces or splints." (Tr. 270). Plaintiff reported that his heart condition prevents him from reaching or bending. (Tr. 270).

An examination of Plaintiff's knees "revealed tenderness" but "no evidence of effusion, excessive skin warmth or gross deformities." (Tr. 271). A cardiovascular examination revealed that Plaintiff's peripheral pulses "were present and equal." (Tr. 271). Plaintiff exhibited 5/5 strength in all muscle groups tested in his upper and lower extremities. (Tr. 272). The results of a sensory examination were unremarkable and Plaintiff "was able to ambulate under his own power." (Tr. 272). Romberg testing[2] was "unremarkable" and an examination of Plaintiff's lumbar spine revealed no evidence of muscle spasm. (Tr. 272). The doctor concluded that Plaintiff "cannot perform duties where he is bending or lifting more than 15 to 20 pounds" and "should also not be performing repetitive twisting." (Tr. 272).

On February 19, 2007, Plaintiff was examined by Dr. John Formolo with Grand River Cardiology. (Tr. 284-86). The results of this examination revealed that Plaintiff "was asymptomatic from a cardiac standpoint." (Tr. 281, 284-86).

---

[2] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on August 4, 2011). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

On December 10, 2007, Dr. Stacia LaGarde completed a report regarding Plaintiff's ability to perform physical activity. (Tr. 312-15). The doctor reported that Plaintiff can occasionally lift and carry up to 10 pounds. (Tr. 312). The doctor reported that Plaintiff can sit for two hours, stand for 20 to 60 minutes, and walk for 15 minutes. (Tr. 312). The doctor reported that Plaintiff required a sit/stand option and can occasionally crawl, crouch, kneel, climb ramps or stairs, and reach above shoulder level. (Tr. 312-13). On January 9, 2008, Dr. LaGarde reported that Plaintiff was not experiencing any side effects from his medications. (Tr. 321).

Treatment notes dated January 10, 2008, reveal that Dr. Formolo discontinued Plaintiff's prescriptions for Verapamil and Metoprolol and instead prescribed Coreg.[3] (Tr. 326-27). On January 15, 2008, Plaintiff reported that he used cocaine as recently as June 2007. (Tr. 320).

On April 2, 2008, Plaintiff was examined by Dr. Formolo. (Tr. 324-25). The doctor noted that a recently completed sleep study indicated that Plaintiff was experiencing obstructive sleep apnea, but that Plaintiff was "having trouble with his C-PAP because of his nasal congestion." (Tr. 324). Plaintiff also reported that "the Coreg is working well" with "no apparent side effects." (Tr. 324). On April 15, 2008, Plaintiff reported to Dr. LaGarde that using the C-PAP was "uncomfortable." (Tr. 319). The doctor counseled Plaintiff about the benefits of regularly using his C-PAP device. (Tr. 319).

On August 6, 2008, Dr. LaGarde completed another report regarding the Plaintiff's ability to perform physical activity. (Tr. 332-35). The doctor reported that during an 8-hour workday Plaintiff can sit for six hours, stand for one hour, and walk for one hour. (Tr. 332). The

---

[3] Coreg is used to treat high blood pressure. *See Coreg*, available at http://www.drugs.com/coreg.html (last visited on August 4, 2011).

doctor reported that Plaintiff can occasionally lift and carry up to 10 pounds. (Tr. 332). The doctor reported that Plaintiff can occasionally crawl, crouch, kneel, climb ramps and stairs, and reach above shoulder level. (Tr. 333).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from (1) degenerative disc disease of the lumbar spine, (2) bilateral knee arthritis, and (3) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21-22). The ALJ concluded that while Plaintiff had no past relevant work, there existed a significant number of jobs he could perform despite his limitations. (Tr. 23-27). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can lift 10 pounds occasionally; (2) he can sit for six hours during an 8-hour workday; (3) he can stand and walk for one hour each during an 8-hour workday; (4) he requires a sit-stand option; (5) he requires a cane to balance or walk outdoors; (6) he cannot squat or climb ladders, ropes, or scaffolds; (7) he can only occasionally stoop, kneel, crouch, crawl, reach above shoulder level, or climb ramps or stairs; (8) he has unlimited use of hands to handle, finger, and feel; (9) he can only

occasionally push, pull, or operate hand controls with his left upper extremity; and (10) he cannot work around unprotected heights, dangerous moving machinery, humidity, or wetness. (Tr. 23). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff had no past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert James Lozer.

The vocational expert testified that there existed approximately 4,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 399-402). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the

significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374-75 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

      a.      The ALJ's RFC Determination is Supported by Substantial Evidence

At the administrative hearing, Plaintiff testified that he was unable to work because he has to sleep after taking his medications. (Tr. 398). Plaintiff argues that the ALJ committed error by failing to include in his RFC determination "restrictions of daytime napping."

The ALJ addressed this particular issue, concluding that the inclusion of any such restriction was not supported by the evidence. (Tr. 24-25). As the ALJ observed, even if it is assumed that Metoprolol caused Plaintiff to experience drowsiness,[5] he was later switched to Coreg which Plaintiff reported did not produce any side effects. To the extent that Plaintiff asserts that his alleged sedating side effects were not caused by Metoprolol (as he reported to Dr. LaGarde), but were instead caused by some other medication, such is not supported by the record. As the ALJ also observed, the medical evidence indicates instead that to the extent Plaintiff experiences "day-time tiredness" such is the result of sleep apnea. In this regard, however, as the ALJ observed, Plaintiff has not used his C-PAP device regularly despite being counseled to do so by his care providers.

In sum, the ALJ's conclusion that to the extent Plaintiff experiences "day-time tiredness" such is the result of sleep apnea (for which Plaintiff has not complied with his care providers' treatment instructions) rather than the side effects of medication as alleged is supported by substantial evidence. The record does not support Plaintiff's assertion that he experienced work preclusive sedating side effects from his medication. The Court, therefore, discerns no error in the

---

    [5] Plaintiff reported to Dr. LaGarde that he was "tired" as a result of taking Metoprolol and "naps everyday." (Tr. 315).

ALJ's RFC determination and finds that the ALJ's RFC determination is supported by substantial evidence.

        b.      The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. LaGarde twice completed reports regarding Plaintiff's ability to perform physical activity. Plaintiff asserts that the ALJ improperly rejected the doctor's conclusion that Plaintiff's medication caused work-preclusive sedating side effects. Plaintiff asserts that because Dr. LaGarde was his treating physician, the ALJ was required to afford controlling weight to her opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991

WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

First, Dr. LaGarde never expressed the opinion that Plaintiff suffered from work preclusive sedating side effects as a result of his medication. Rather, the doctor merely reported Plaintiff's subjective allegations on the subject. In her December 10, 2007 report, Dr. LaGarde noted that Plaintiff reported that he was "tired" as a result of taking Metoprolol and "naps everyday." (Tr. 315). Less than one month later, however, Dr. LaGarde reported that Plaintiff experienced "no side effects from his medications." (Tr. 321). As for Dr. LaGarde's August 6, 2008 report, the doctor again simply reported Plaintiff's allegation that an unidentified medication caused him to nap throughout the day. (Tr. 335). As discussed above, however, by August 6, 2008, Plaintiff had been switched to Coreg which Plaintiff reported resulted in no side effects. As

previously noted, to the extent Plaintiff asserts that he suffered sedating side effects from medications other than Metoprolol, such is not supported by the record.

The Court discerns no error in the ALJ's assessment of Dr. LaGarde's opinions. As Plaintiff concedes, the ALJ adopted the limitations expressed in the doctor's August 2008 report, save Plaintiff's subjective allegation that he experienced sedating side effects from his medication. As Plaintiff's allegations do not constitute a medical opinion, the Court discerns no error in the ALJ's analysis of Dr. LaGarde's opinion. Moreover, even if the doctor's report is interpreted as asserting the "opinion" that Plaintiff experienced work preclusive sedating side effects from his medication, such was properly rejected for the reasons stated by the ALJ and discussed herein.


## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  August 12, 2011              /s/ Ellen S. Carmody_____
                                    ELLEN S. CARMODY
                                    United States Magistrate Judge

14